## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

JOHN KENDALL                                          CIVIL ACTION

VERSUS                                                NO.  07-1182

JEFFERY TRAVIS, WARDEN, RCC                           SECTION "N"(2)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FEDERAL PROCEDURAL BACKGROUND

The petitioner, John Kendall, is incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2]  Kendall was charged by bill of information in St. Tammany Parish on August 22, 2002, in Case No. 352-580, with the production and manufacture of methamphetamine.[3]  Kendall was charged in a separate bill of information in Case No. 352-581, with possession of methamphetamine, possession of oxycodone and possession of hydrocodone.[4]  The State entered a nolle prosequi in the latter case on May 2, 2005.[5]  The instant petition for federal habeas corpus relief is directed toward Kendall's conviction and sentence concerning the methamphetamine charge in Case No. 352-580 only.

The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> On April 18, 2002, Officers James Blackwell and Robert Blundt of the Covington Police Department were dispatched to the shopping center at 100 Tyler Street in Covington to investigate a suspicious vehicle.  The dispatch was in response to a report indicating that a vehicle with a white male occupant had been parking in the parking lot for approximately four hours.  When the officers arrived, they observed a white male slumped in the passenger side of the vehicle with the door partially opened.  The occupant, later identified as defendant,

---

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 3, Bill of Information, 8/22/02 (352-580).

[4] St. Rec. Vol. 1 of 3, Bill of Information, 8/22/02 (352-581).

[5] Id.

appeared to be asleep.  Officer Blackwell knocked on the vehicle's window in an attempt to awaken defendant.  Once defendant finally awoke, Officer Blackwell asked if he was feeling okay and inquired as to why he had been parked there so long.  Defendant did not respond.  Thereafter, Officer Blackwell asked defendant for identification.  After fumbling around in the vehicle for a while, defendant eventually produced an identification card that, according to Officer Blackwell, was obviously not his and was over four years expired.  When further questioned regarding the validity of the identification card, defendant did not respond.  The officers asked defendant to step out of the vehicle, and defendant complied.

Before defendant exited the vehicle, Officer Blackwell observed on the floorboard a small piece of aluminum foil, which he testified was "immediately recognizable" to him as associated with narcotics.

Outside the vehicle, Officer Blackwell again questioned defendant as to why he had ben parked in the area so long.  Defendant explained that he had come to the area with his girlfriend to meet a friend of hers.  His girlfriend then left with the friend, leaving defendant behind.  He claimed he was parked there waiting for his girlfriend to return.  Officer Blackwell asked defendant if the vehicle belonged to him.  Defendant responded affirmatively.  Officer Blackwell requested permission to search the vehicle.  Defendant granted consent to search.

In searching the vehicle, Officer Blackwell seized the piece of aluminum foil from the floorboard.  Under the passenger seat, where defendant had been sitting, the officers found a purple felt bag containing several snack plastic bags, a prescription bottle with a white powder substance inside, and several bottles that contained various pills.  Defendant was read his Miranda rights, handcuffed, and arrested for possession of narcotics.  During a search incident to defendant's arrest, the officers removed a blue tablet, later determined to be Lortab, from defendant's front, right pocket.  Further search of the vehicle resulted in discovery of camp fuel, clear tubing, jars of a clear unknown liquid, a blender, coffee filters and lithium batteries, indicative of a "mobile methamphetamine laboratory."

State Record Volume 3 of 3, 1st Cir. Opinion, 2004-KA-1039, pages 3-4, May 6, 2005;

State v. Kendall, 903 So.2d 21 (La. App. 1st Cir. 2005) (Table).

On September 16, 2002, Kendall's counsel filed motions to suppress evidence and his statements.[6]  At a hearing held July 2, 2003, before the start of trial, the state trial

---

[6]St. Rec. Vol. 1 of 3, Motion to Suppress Evidence, 9/16/02 (both cases); Motion to Suppress the Confession, 9/16/02 (both cases).

court denied the motions.[7]  Kendall was thereafter tried by a jury on July 2 and 3, 2003,

and was found guilty as charged of possession of methamphetamine.[8]

On July 22, 2003, Kendall's counsel filed motions to reconsider the sentence, for

post-verdict judgment of acquittal, for a new trial and for appeal.[9]  At the sentencing

hearing held on September 23, 2003, the state trial court denied the motions, including

the motion for appeal as premature.[10]  The court also sentenced Kendall to 30 years in

prison without benefit of parole, probation or suspension of sentence.[11]  Counsel orally

moved for appeal, and the request was granted.[12]  The State later filed a multiple offender

bill.[13]

---

[7]St. Rec. Vol. 2 of 3, Minute Entry (352-580), 7/2/03; St. Rec. Vol. 1 of 3, Trial Minutes (6 pages), 7/2/03; Trial Transcript, pp. 4-22, 7/2/03.  The motions were raised and heard as to both criminal cases against Kendall.  See Minute Entry (352-581), 7/2/03.

[8]St. Rec. Vol. 1 of 3, Trial Minutes (6 pages), 7/2/03; Trial Minutes (7 pages), 7/3/03; Verdict of the Jury, 7/3/03; Trial Transcript, 7/2/03; St. Rec. Vol. 2 of 3, Trial Transcript (continued) 7/2/03; Trial Transcript, 7/3/03.

[9]St. Rec. Vol. 1 of 3, Motion to Reconsider Sentence, 7/22/03; Motion for Post Verdict Judgment of Acquittal, 7/22/03; Motion for New Trial, 7/22/03; Motion for Appeal, 7/22/03.

[10]St. Rec. Vol. 1 of 3, Sentencing Minutes (2 pages), 9/23/03; St. Rec. Vol. 2 of 3, Sentencing Transcript, 9/23/03.

[11]Id.

[12]Id.  A written motion was also filed on October 24, 2003.  St. Rec. Vol. 1 of 3, Motion for Appeal, 10/24/03.

[13]St. Rec. Vol. 1 of 3, Multiple Offender Bill, 9/29/03.

On appeal to the Louisiana First Circuit Court of Appeal, Kendall's counsel raised three grounds for relief:[14] (1) the state trial court erred in denying the motion to suppress the evidence; (2) the evidence was insufficient to support the verdict; (3) the sentence imposed was excessive.

While the appeal was pending, the state trial court held a status hearing on the multiple offender proceedings.[15] The proceedings were postponed because of the State's inability to retrieve documents from Florida in connection with prior offenses.  On January 27, 2005, the state trial court held another hearing on the multiple offender bill and found Kendall to be a fourth offender.[16] The court sentenced him to serve 45 years in prison without benefit of parole, probation or suspension of sentence.[17]

On March 16, 2005, Kendall filed a pro se motion for reconsideration of the sentence.[18] The state trial court denied the motion without reasons the same day.[19]

---

[14]See St. Rec. Vol. 3 of 3, 1st Cir. Opinion, 2004-KA-1039, 5/6/05; State v. Kendall, 903 So.2d 21 (La. App. 1st Cir. 2005) (Table).

[15]St. Rec. Vol. 3 of 3, Hearing Transcript, 5/6/04.

[16]St. Rec. Vol. 3 of 3, Minute Entry (2 pages), 1/27/05; Multiple Bill Hearing Transcript, 1/27/05.

[17]Id.

[18]St. Rec. Vol. 3 of 3, Motion and Order to Reconsider Sentence, 3/16/05.

[19]St. Rec. Vol. 3 of 3, Trial Court Order, 3/16/05.

Two months later, on May 6, 2005, the Louisiana First Circuit affirmed Kendall's conviction on direct appeal.[20]  The court found no merit to Kendall's claims concerning denial of the motion to suppress and insufficient evidence.  The court also held that the claim of excessive sentence was moot because the challenge was brought to the original sentence, which had been vacated at the multiple offender sentencing.

Kendall timely[21] filed a writ application with the Louisiana Supreme Court in which he raised the same grounds for relief raised by counsel on direct appeal.[22]

On June 28, 2005, while the Louisiana Supreme Court writ application was pending, Kendall filed an application for post-conviction relief in which he requested reinstatement of his right to appeal the multiple offender sentence.[23]  The state trial court denied relief on July 25, 2005, because the application failed to state a claim for which relief may be granted.[24]

---

[20]St. Rec. Vol. 3 of 3, 1st Cir. Opinion, 2004-KA-1039, 5/6/05; State v. Kendall, 903 So.2d at 21.

[21]La. Code Crim. P. art. 922(C); La. S. Ct. R. X§5(a).

[22]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 05-KO-2004, 8/1/05 (signed 6/1/05, postmarked 6/2/05).

[23]St. Rec. Vol. 3 of 3, Uniform Application for Post Conviction Relief, 6/28/05.

[24]St. Rec. Vol. 3 of 3, Trial Court Order, 7/25/05.

The record reflects that Kendall sought review in the Louisiana First Circuit in a writ application filed December 1, 2005.[25] The court denied the application on February 13, 2006.[26] The court held that Kendall had failed to provide the documents required for its review of his writ application. The court also indicated that, while Kendall was not allowed under court rules to supplement or seek rehearing, any new application with the required documentation must be filed by April 10, 2006. Kendall did not do so.

Four days later, on February 17, 2006, the Louisiana Supreme Court denied without reasons Kendall's 2005 pending writ application seeking review of his direct appeal.[27] Kendall's conviction became final 90 days later, on May 18, 2006, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

In the meantime, on March 4, 2006, Kendall submitted a timely writ application to the Louisiana Supreme Court, which was filed May 22, 2006, seeking further review

---

[25]St. Rec. Vol. 3 of 3, Copy of 1st Cir. Writ Application (undated) (received by state trial court on 12/19/05). The filing date of the writ application, December 1, 2005, was obtained from the office of the clerk of court for the Louisiana First Circuit.

[26]St. Rec. Vol. 3 of 3, 1st Cir. Order, 2005-KW-2536, 2/13/06.

[27]State v. Kendall, 924 So.2d 1013 (La. 2006); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2005-KO-2004, 2/17/06.

of the trial and appellate courts' denial of his application for post-conviction relief.[28]  The court denied the application on the showing made on December 8, 2006.[29]

## II.   FEDERAL HABEAS PETITION

On March 1, 2007, Kendall filed a petition for federal habeas corpus relief in which he alleges three grounds for relief:[30] (1) The state trial court erred in denying the motion to suppress the evidence. (2) The evidence was insufficient to support the verdict. (3) The state courts erred in failing to reinstate his right to appeal the multiple offender sentence.

The State filed a response in opposition to the petition, alleging that Kendall's challenge to his multiple offender sentence is untimely and barred from federal review. The State also argues that the other two claims are without merit.[31]

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[28]The record does not contain a copy of this writ application.  The filing date of May 22, 2006, and postmark date of March 4, 2006, were obtained from the office of the clerk of court for the Louisiana Supreme Court.

[29]State ex rel. Kendall v. State, 943 So.2d 1066 (La. 2006); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2006-KH-1194, 12/8/06.

[30]Rec. Doc. No. 1.

[31]Rec. Doc. No. 4.

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[32] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Kendall's petition, which, for reasons discussed below, is deemed filed in a federal court on February 8, 2007.[33]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Kendall has exhausted state court remedies.  The State argues, however, that Kendall's claim arising from the multiple offender adjudication is untimely filed and the remaining claims are without merit.

---

[32]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[33]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Kendall's petition was filed by the clerk of court on March 1, 2007.  Kendall dated his signature on the petition on February 8, 2007. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.

IV.   <u>LIMITATIONS DEFENSE</u>

The State alleges that Kendall's challenge to his multiple offender adjudication, apparently arising from his third claim, is untimely.  The State suggests that the multiple offender adjudication became final at a time different from and prior to that of the underlying criminal conviction, rendering any challenge thereto untimely under the AEDPA.  The State's argument has no basis in law and this defense must be rejected.

First, I note that, contrary to the State's suggestion, Kendall has not directly challenged the multiple offender adjudication and sentence.  The claim raised in this court is that the state courts erred in failing to reinstate his right to appeal the multiple offender sentence.

Second, Section 2244(d)(1) of the federal habeas statute requires that a petitioner bring his Section 2254 claims, among other things not relevant here, within one year from the date of finality of the state court judgment.[34]  Specifically, the statute provides

---

[34]Specifically, Section 2244(d) provides:
(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
      (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
      (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such State action;
      (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on

that the limitations period applicable to "a person in custody pursuant to the judgment of a State court" shall run from, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  The United States Supreme Court has long held that "'[f]inal judgment in a criminal case means sentence.  The sentence is the judgment.'"  <u>Burton v. Stewart</u>, 127 S. Ct. 793, 798-99 (2007) (<u>quoting</u> <u>Berman v. United States</u>, 302 U.S. 211, 212 (1937)).  In applying this rule, the Supreme Court has held that the AEDPA limitations period "did not begin until <u>both</u> his <u>conviction</u> <u>and</u> <u>sentence</u> became final by the conclusion of direct review or the expiration of the time for seeking such review." <u>Burton</u>, 127 S. Ct. at 799 (emphasis added, quotation omitted).  Thus, finality occurs when review of both the conviction and sentence is concluded, not at two separate points as suggested by the State.

As indicated above, review of Kendall's conviction and sentence was concluded and they became final on May 18, 2006, which was 90 days after the Louisiana Supreme Court denied his writ application following direct appeal.  Kendall also had pending at

---

collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

11

that time other collateral review proceedings which were not resolved by the Louisiana Supreme Court until December 8, 2006. This too would provide Kendall with the benefit of statutory tolling under the AEDPA.[35] Kendall's federal petition, deemed filed on February 8, 2007, was clearly filed within one year of the finality of his conviction and sentence as determined by the AEDPA. The State's limitation defense is without merit.

## V.   STANDARDS OF MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

---

[35]The AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

A.    DENIAL OF THE MOTION TO SUPPRESS

Kendall argues that the state trial court should have suppressed the evidence seized from him and the car on grounds that the search and arrest were the result of an illegal investigatory stop during which he was denied his Fourth Amendment rights in violation of Terry v. Ohio, 392 U.S. 1 (1968).  The availability of federal habeas corpus relief with regard to an alleged Fourth Amendment violation is greatly limited by the United States Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976).

In Stone, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Id. at 494.  A "full and fair hearing means that 'where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.'"  Davis v. Blackburn, 803 F.2d 807,

808 (5th Cir. 1986) (per curium) (quoting O'Berry v. Wainwright, 546 F.2d 1204, 1213 (5th Cir. 1977) (emphasis in original)).  Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded.  Stone, 428 U.S. at 494-95 n.37; Bell v. Lynaugh, 828 F.2d 1085, 1091-92 (5th Cir. 1987).

Thus, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," petitioner's claim cannot succeed.  Williams v. Brown, 609 F.2d 216, 220 (5th Cir. 1980); Christian v. McKaskle, 731 F.2d 1196, 1199 (5th Cir. 1984).  The bar of Stone v. Powell applies despite any state trial court error in deciding the merits of petitioner's Fourth Amendment claim.  Andrews v. Collins, 21 F.3d 612, 631-32 (5th Cir. 1994); Christian, 731 F.2d at 1199 n.1; Swicegood v. Alabama, 577 F.2d 1322, 1324-25 (5th Cir. 1978).

The record indicates that Kendall's counsel filed motions to suppress the evidence and his statements on September 16, 2002.[36]  At an evidentiary hearing held prior to trial on July 2, 2003, at which testimony and argument were received, the state trial court

---

[36]St. Rec. Vol. 1 of 3, Motion to Suppress Evidence, 9/16/02; Motion to Suppress Confession, 9/16/02.

denied the motions.[37]  Kendall's counsel also raised the issue on direct appeal.  The

Louisiana First Circuit exhaustively examined the Fourth Amendment claim, held that

the initial stop was not illegal and found no basis to suppress the evidence.[38]  Kendall's

subsequent writ application to the Louisiana Supreme Court was denied without

reasons.[39]  The Louisiana Supreme Court is presumed to have relied upon the same

grounds as the Louisiana Fifth Circuit's reasoned opinion.  Ylst v. Nunnemaker, 501 U.S.

797, 802 (1991).

After reviewing the record, I find that "the material facts were adequately

developed in state court, and [petitioner] has not alleged any undeveloped evidence

sufficient to call into question the reliability of the state court's determination of [his]

federal claims."  Andrews, 21 F.3d at 631.  The State provided Kendall, who was assisted

by counsel, with the opportunity to litigate his Fourth Amendment claims fully and fairly.

The fact that he may disagree with the state courts' decision to deny relief is not

sufficient to overcome the Stone v. Powell bar to federal review.  Janecka v. Cockrell,

301 F.3d 316, 320-21 (5th Cir. 2002).  Accordingly, Stone v. Powell bars review of this

---

[37]St. Rec. Vol. 2 of 3, Minute Entry (352-580), 7/2/03; St. Rec. Vol. 1 of 3, Trial Minutes (6 pages), 7/2/03; Trial Transcript, pp. 4-22, 7/2/03.

[38]St. Rec. Vol. 1 of 3 of 3, 1st Cir. Opinion, 2004-KA-1039, 5/6/05.

[39]State v. Kendall, 924 So.2d at 1013; St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2005-KO-2004, 2/17/06.

claim.  Id.; Williams v. Collins, 16 F.3d 626, 637-38 (5th Cir. 1994).  This claim for federal habeas relief must be dismissed.

B.      SUFFICIENCY OF THE EVIDENCE

Kendall alleges that the evidence was insufficient to support the verdict because the State relied on circumstantial evidence to establish that he manufactured methamphetamine.  Kendall argues that it was insufficient for the State to rely on the presence of equipment and some of the ingredients needed for the manufacture of methamphetamine simply because they were found in the same car in which Kendall was sitting.  He claims that the State failed to present any direct evidence to link Kendall to the actual manufacture of the drug.  He therefore concludes that the jury could not have eliminated all reasonable hypotheses of innocence as required under Louisiana law.

Kendall's counsel raised this claim on direct appeal to the Louisiana First Circuit. Using the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), and related state case law, the court held that the evidence presented was sufficient to support the verdict. The court concluded that the jury could reasonably find that Kendall was in charge of the vehicle in which the manufacturing and drug items were found and that he was using the car as a mobile methamphetamine laboratory.

The Louisiana Supreme Court denied Kendall's subsequent application without reasons and, thus, is presumed to have relied upon the same grounds as the Louisiana Fifth Circuit's reasoned opinion.  Ylst, 501 U.S. at 802.

A claim of insufficient evidence presents a mixed question of law and fact.  Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The well established federal standard set forth in Jackson, 443 U.S. at 319, requires the court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt.  Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2000); Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992); Guzman v. Lensing, 934 F.2d 80, 82 (5th Cir. 1991).

With respect to this standard, Kendall argues that, because the State relied heavily on circumstantial evidence, the jury had to exclude every reasonable hypotheses of innocence.  This is not, however, the legal standard on federal habeas review.

Louisiana law allows a crime to be proven by circumstantial evidence.  "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438.  However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, but must apply the Jackson standard of review and that of the AEDPA.  Gilley, 968 F.2d at 467 (citing Schrader v.

18

Whitley, 904 F.2d 282, 284 (5th Cir. 1990)).  "This is not a purely separate test from the

Jackson standard to be applied instead of a sufficiency of the evidence test . . . .

Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson

to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt."  State

v. Porretto, 468 So. 2d 1142, 1146 (La. 1985); accord State v. Williams, 693 So. 2d 204,

208 (La. App. 4th Cir. 1997).  The reasonable hypothesis standard under state law is "just

an evidentiary guide for the jury.  If a rational trier of fact reasonably rejects the

defendant's hypothesis of innocence, that hypothesis fails."  State v. Maxie, 614 So. 2d

1318, 1321 (La. App. 3d Cir. 1993); accord State v. Williams, 693 So. 2d at 208.

Kendall was charged with production or manufacture of methamphetamine in

violation of La. Rev. Stat. Ann. § 40:967(A)(1), which states:

> A.   Manufacture; distribution. Except as authorized by this Part or by
> Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes
> of 1950, it shall be unlawful for any person knowingly or
> intentionally:
> (1) To produce, manufacture, distribute, or dispense or possess with
> intent to produce, manufacture, distribute, or dispense, a controlled
> dangerous substance or controlled substance analogue classified in
> Schedule II.

Methamphetamine is listed as a Schedule II controlled dangerous substance. La. Rev.

Stat. Ann. § 40:964.

To sustain a conviction for production or manufacture of methamphetamine, the

State must show that the defendant had a specific intent to produce or manufacture

methamphetamine.  See State v. Dukes, 609 So.2d 1144, 1151 (La. App. 2d Cir. 1992)

(defining attempted manufacture of methamphetamine).  The phrase "specific intent" is

defined as the state of mind in which the perpetrator "actively desired the prescribed

criminal consequences to follow his act or failure to act."  La. Rev. Stat. Ann. § 14:10(1).

Under Louisiana law, intent need not be proven directly but may be inferred from the

actions of the defendant and the circumstances surrounding those actions.  State v.

Sharlhorne, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989).

At trial, the State offered testimony from the arresting officers regarding things

recovered from Kendall's vehicle.  Patrolman James Blackwell testified that Kendall told

him that the car in which he was sitting was his.[40]  Kendall granted permission for the

officers to search the vehicle and he was advised of his rights.[41]  Kendall also admitted

at the scene that he had smoked "crystal meth" earlier that day and that he had taken

other pain medication.[42]  The officer retrieved from the floor in front of Kendall's seat

an aluminum foil packet, a velvet bag holding a prescription bottle containing white

---

[40]St. Rec. Vol. 2 of 3, Trial Transcript, p. 16, 7/3/03.

[41]Id.. at pp. 16, 17.

[42]Id., at pp. 15, 16.

20

powder, several baggies containing some white powder, nine blue pills, an orange pill and a green pill.[43]  The officers also recovered other blue pills from Kendall's clothing.[44]

After Kendall was arrested for possession of these narcotics, Patrolman Blackwell and Patrolman Robert Blundt decided to call Detective James McIntosh to conduct an inventory search of the contents of the car because of their concern that the car was a methamphetamine laboratory.[45]  Detective McIntosh, who was trained in handling methamphetamine laboratories, located pseudoephedrine, clear tubing, a homemade hotplate, a homemade power inverter, a blender with white powder residue, propane tanks, lithium batteries, plastic bags with white powder, a glass pipe with residue, a white filter, a blender lid with white powder residue, coffee filters, pliers and other hand tools.[46]  These items are known to be used in the manufacture of methamphetamine.[47]  The detective also recovered Kendall's identification and other paperwork from the trunk and

---

[43]Id., at pp 17, 43-44.

[44]Id., at pp. 20, 43-44.

[45]Id., at pp. 17-18.

[46]Id., at pp. 41-42, 47-48, 51-52.

[47]Id., at p. 42.

a bottle containing an unknown liquid, later believed to be ether.[48]   The search was videotaped by Detective Nick Tranchina.[49]

The State also presented the testimony of Agent Jason Gill of the United States Drug Enforcement Agency, who was present during the search of Kendall's car.[50]   Agent Gill explained to the jury the methods used for manufacturing methamphetamine.[51]

The jury also heard the testimony of Ed Dunn, an expert in forensic chemistry, who testified regarding the identification of the narcotics seized from Kendall and his car.[52]

Kendall also testified on his own behalf.  Kendall testified that the car belonged to his girlfriend's ex-boyfriend, David, whom they had met in the parking lot.[53]   Kendall denied telling the officers that it was his car or that he had taken drugs that day.[54]

In spite of this testimony, the jury obviously credited the officers' testimony that Kendall admitted that the car belonged to him and that he had consumed methamphetamine earlier that day.  The fact that Kendall's conviction may have been

---

[48] Id., at pp. 44, 46, 79.

[49] Id., at p. 66.

[50] Id., at pp. 73-92.

[51] Id., at pp. 82-87.

[52] Id., at pp. 95-100.

[53] Id., at p. 117.

[54] Id., at p. 118.

based on the credibility of witness testimony is insufficient to supplant the jury's determination of guilt.  Green v. Johnson, 160 F.3d 1029, 1047 (5th Cir. 1998).  Review of the sufficiency of the evidence does not include review of the weight of the evidence or of the credibility of the witnesses.  Schlup v. Delo, 513 U.S. 298, 330 (1995) (under Jackson resolving credibility issues is generally beyond the scope of appellate review); United States v. Goff, 155 Fed. Appx. 773 (5th Cir. 2005) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir.1993)).  Instead, the narrow standard of review under Jackson "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  "The trier of fact has broad discretion to 'resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  Green, 160 F.3d at 1047 (quoting Jackson, 443 U.S. at 319).

The jury was also acting within its discretion to infer from the testimony and the circumstantial evidence, such as the presence of powder residue and the items found in the car, that Kendall had the specific intent to manufacture methamphetamine.  The jury also could have reasonably inferred that the items found within the same premises, the car,  were being used by Kendall to produce methamphetamine.  State v. Shumaker, 945 So.2d 277, 284 (La. App. 2d Cir. 2006) (jury could infer same even where State failed to prove ownership of the vehicle in which items were found).

23

Furthermore, La. Rev. Stat. Ann. § 40:967(A), does not require that the State prove that Kendall was in the actual process of manufacturing methamphetamine or that he have in his possession a finished product at the time of the search and seizure. Shumaker, 945 So.2d at 284 (citing La. Rev. Stat.40:961(24), (34)) and State v. Lingefelt, 865 So.2d 280 (La. App. 2d Cir. 2004)). Louisiana law provides that proof of methamphetamine residue stands as evidence that the defendant had succeeded in manufacturing the drug. Shumaker, 945 So.2d at 284. In this case, the State presented proof that methamphetamine residue was found on the objects in Kendall's car.

Based upon the evidence presented at trial, there was sufficient evidence for a rational factfinder to conclude that Kendall was guilty of manufacturing methamphetamine. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Jackson. Kendall is not entitled to relief on this claim.

C.   DENIAL OF RIGHT TO APPEAL MULTIPLE OFFENDER SENTENCE

Kendall's third claim alleges that the state courts erred in failing to reinstate his right to appeal the multiple offender sentence. The record shows that, while his direct appeal was pending, Kendall first sought reinstatement of his right to appeal the multiple offender sentence in an application for post-conviction relief in the state trial court. The court denied the application for failure to state a claim upon which relief could be granted.

On review, the Louisiana First Circuit denied the writ, finding that Kendall had not provided the required supporting documentation for the court to consider his writ application.[55]  The court also instructed that Kendall could neither supplement the application nor seek rehearing, citing Uniform Rules of Louisiana Courts of Appeal, Rules 2-18.7 and 4-9.[56]

The court also gave Kendall a deadline of April 10, 2006, to file a new application with the appropriate supporting documentation.  Kendall instead sought further review in the Louisiana Supreme Court, which also denied the application.  These opinions do not provide specific reasons for the denial of the merits of the claim.

A state prisoner seeking federal court review of his conviction pursuant to 28 U.S.C. § 2254 must assert a violation of a federal constitutional right.  Gray v. Lynn, 6 F.3d 265, 268 (5th Cir. 1993).  The United States Constitution does not generally mandate the right to appeal a criminal conviction.  Lawrence v. Lensing, 42 F.3d 255, 258 (5th Cir. 1994) (citing Griffin v. Illinois, 351 U.S. 12, 19-21 (1956)).  "The right to appeal a criminal conviction is a statutory right, not a constitutional right."  United States v. Henderson, 72 F.3d 463, 464-65 (5th Cir. 1995) (citing Abney v. United States, 431

---

[55]Uniform Rules of Louisiana Courts of Appeal, Rule 4-1 and 4-5, set forth the requirements for filing a proper writ application and the documents to be attached thereto, including, a copy of the application for post conviction relief, the state's answer, the trial court's ruling, and any other portions of the court record relevant to the claims raised.

[56]Rule 2-18.7 provides, in relevant part, that rehearing will be considered when the court has granted a writ application on the merits.  Rule 4-9 clarifies that Rule 2-18.7 is applicable to requests for rehearing on writ applications.

U.S. 651, 656 (1977)).  Louisiana provides a convicted defendant with a statutory right to appeal.  La. Code Crim. P. art. 912.1.  It is questionable, however, whether Kendall's right to appeal argument raises a federal constitutional claim cognizable on habeas review.  Lawrence, 42 F.3d at 258.

Even assuming that such a claim is cognizable, Kendall's claim is not supported by the state court record in this case.  Kendall in fact appealed his conviction, and the conviction was affirmed by the Louisiana First Circuit, followed by Louisiana Supreme Court denial of his subsequent writ application.  While the direct appeal was pending, Kendall was adjudicated a fourth offender and sentenced to serve 45 years in prison.

The record reflects that Kendall filed an unsuccessful motion for reconsideration of the multiple offender sentence.  Kendall, however, failed to move for an appeal of the sentence in a procedurally proper manner.  As noted by both Kendall and the State, he wrote a letter to the clerk of the state trial court to indicate his intent to appeal, but he never filed a motion for appeal as required by Louisiana law.[57]  The record does not contain any indication, and Kendall does not allege, that he requested that his appointed counsel file the appeal or seek leave to amend the pending appeal.

When Kendall was given an opportunity properly to seek collateral review, he also failed to comply with the state appellate court's instruction.  The Louisiana First Circuit

---

[57]St. Rec. Vol. 3 of 3, Letter to Clerk of Court, 7/29/05.

instructed Kendall of the proper manner to seek review of the state trial court's denial of his application for post-conviction relief, in which he sought enforcement of his right to appeal.  Kendall failed to comply.

Kendall has failed to establish that he was in fact denied the right to appeal by the state courts.  Instead, the record reflects that Kendall failed to seek review of his multiple offender sentence in his direct appeal and failed adequately to seek enforcement of his right on collateral review.  He has not made any showing that his inability to obtain appellate review was the result of denial of due process or that he was denied the right to appeal in violation of any constitutional right.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, federal law.  Kendall is not entitled to relief on this claim.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition of John Kendall for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___10th___ day of September, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE